578 P.2d 1023

The STATE of Arizona, Appellee,

v.

Calvin GADDY, Appellant.

1 CA–CR 2773.

Court of Appeals of Arizona,
Division 1,
Department B.

March 14, 1978.
Rehearing Denied May 24, 1978.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Legal Dept., The Navajo Tribe, Michael Vaclav Stuhff, Window Rock, for appellant.

## OPINION

OGG, Judge.

The appellant/defendant Calvin Gaddy was convicted after a jury trial of second degree murder and assault with a deadly weapon. The defendant was sentenced to a term of not less than eighteen months nor more than twenty-four months on the conviction of assault with a deadly weapon and to a term of eleven years to twelve years on the conviction of murder in the second degree. Both terms were to be served concurrently.

The defendant now appeals from the judgments of guilt and the sentences imposed.

The facts disclose that the defendant and four other individuals were involved in an altercation at Harold's Inn, a bar located in Sanders, Arizona, close to the border of the Navajo Indian Reservation. During the fight the proprietor of the bar, Troy Williams, was stabbed and later died as a result of his injuries. The defendant suffered head injuries and two of his wounds were serious enough to require stitching and hospitalization.

The defendant raises several issues; however, two of the issues are dispositive of this appeal. Those issues are:

1. Whether the trial court erred when it admitted into evidence a medical report containing a highly prejudicial hearsay statement.

2. Whether the county attorney had a conflict of interest which deprived the defendant of a fair trial.

## MEDICAL REPORT ISSUE

The defendant was treated by Dr. J. J. Heynekamp after the fight. The doctor apparently routinely dictated a medical report from the information given to him by the officers, the defendant, and from his own physical examination and treatment. The crucial statement in the medical report reads:

> This 27-year old male was brought in by the sheriff with two head wounds, one on the top of his head of 6 centimeters and one on his right forehead of about 4 centimeters, which he sustained when a night-stick came in contact with his head *after* the patient had cut somebody's throat. [Emphasis added]

We term this statement as crucial because defendant's major defense was his contention that he had been beaten on the head by the decedent with some blunt instrument and *after* this beating began he pulled his knife in self-defense. One of the key issues was whether the defendant was injured before or after the stabbing incident.

Defense counsel objected to the admission of this portion of the medical report on the grounds it was hearsay. When the doctor was asked who furnished him the information as contained in the challenged portion of his report, he obviously had a difficult time remembering the facts and gave conflicting and confusing answers. When first questioned by the county attorney about who furnished him the information, the doctor stated "I am not sure how much he gave me or how much the people that brought him in gave me." When the county attorney moved to admit the doctor's entire report into evidence, the following testimony developed.

MR. STUHFF: Your Honor, we would object in that this contains hearsay statements that were given by the officers who brought, the arresting officers, who brought him in. I don't think that using

this for bringing those hearsay statements in is appropriate.

THE COURT: I won't let the hearsay in.

MR. STUHFF: If you wanted to delete the hearsay, I would allow him to put it into evidence.

THE COURT: It may be received in evidence subject to the objections of Counsel.

Q. Did the patient advise you that he had been hit with a night stick after he had—

MR. STUHFF: That is calling for, that is hearsay and it is not subject to any exceptions.

THE COURT: He may ask the questions. If the Doctor says no, I would agree. He may ask the question.

Q. The report contains this statement, Doctor. Let me read it to you. Would you tell me whether or not this is the information you received from the Defendant?

> This 27 year old male was brought in by the sheriff with two head wounds, one on top of his head of 6 centimeters and one on his right forehead of about 4 centimeters, which he sustained when a night stick came in contact with his head after the patient had cut somebody's throat.

Was that information that was given to you by the Defendant?

A. The patient had two head wounds. I am assuming that got in the report. It is not a legal document, so what I put after or before, I just know both things happened and which way I put it down, there is, you know, I don't know.

Q. So, you don't recall now whether it was him that said it after or before?

A. No, I wouldn't know that.

When questioned further by defense counsel, the doctor replied "I really don't know who I got the facts from."

It appears the trial court admitted the exhibit into evidence subject to the objections of the defendant's counsel, yet the objectionable portions of the exhibit were never deleted and the entire exhibit was admitted and considered by the jury.

In some criminal cases medical reports may be admitted into evidence for a specific purpose under the Uniform Business Records as Evidence Act, 16 ARS Rules of Civil Procedure, rule 44(q)2. *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203 (1973). However, in this case the admission of this highly prejudicial statement into evidence was error. It was not established who gave this information to the doctor, and therefore the foundation necessary to qualify the statement as an exception to the hearsay rule was not established.

■ The state argues that even if the admission of this entire report was error it was only harmless error because there is no reasonable probability that the verdict would have differed absent that testimony. *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976). We disagree. The major issue in the defendant's self-defense case was whether the defendant had been beaten on the head *before* he stabbed the decedent. We cannot say the jury verdict might not have been different had the court properly excluded the contested portion of the medical report.

## COUNTY ATTORNEY'S CONFLICT OF INTEREST

■ Since we must reverse and this matter may be retried, we will also comment on the conflict of interest issue. At the time of the incident, Stephen Udall, who prosecuted the case, had been elected but not yet sworn in as the Apache County Attorney. He was in private practice and represented the decedent on a pending criminal charge of assault upon a Nelson Begay. At the time of the incident in this case, Mr. Udall was in the process of negotiating a plea agreement for the decedent with the then incumbent county attorney. The fact that Mr. Udall had been representing the decedent at the date of his death on an assault charge was never disclosed to the defendant nor his counsel, and was not discovered by the defendant until the third day of trial. Defendant argues that the county attorney had a duty to disclose to the defense any evidence known to him which tended to

negate the guilt of the defendant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Upon review of the record we have found no observable prejudice as a result of this undisclosed representation of the decedent by the county attorney; we would therefore not reverse the case on this issue. However, in the event this case is retried, it is our recommendation that the county attorney should disqualify himself to avoid even the appearance of a conflict of interest. See *Corbin v. Broadman*, 6 Ariz.App. 436, 433 P.2d 289 (1967).

For the reasons stated herein the convictions are reversed, the sentences imposed are set aside and this case is remanded for further proceedings consistent with this opinion.

EUBANK, P. J., and JACOBSON, J., concur.